UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

| | |
|---|---|
| DAVID DRIVER, <br><br> Plaintiff, <br><br> v. <br><br> CAPRI HOLDINGS LIMITED, JOHN D. IDOL, MARILYN CROUTHER, ROBIN FREESTONE, JUDY GIBBONS, MAHESH MADHAVAN, STEPHEN F. REITMAN, JANE THOMPSON, and JEAN TOMLIN, <br><br> Defendants. | Case No. 23-cv-08465 <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff David Driver ("Plaintiff"), by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

**NATURE OF THE ACTION**

1. This action is brought by Plaintiff against Capri Holdings Limited ("Capri" or the "Company") and the members of the Company's Board ("Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the solicitation of public stockholders of Capri to vote in favor of a merger transaction ("Merger")

pursuant to which Tapestry, Inc ("Tapestry") will acquire all of the outstanding shares of common stock of Capri from Capri public stockholders for $57.00 per share in cash ("Merger Consideration"), and Capri will merge into an affiliate of Tapestry.

2. On August 10, 2023, Capri and Tapestry announced the Merger.

3. On September 20, 2023, Defendants authorized the filing of a false and misleading definitive proxy on Schedule 14A ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, with the aim of soliciting Capri stockholders to vote for the Merger ("Stockholder Vote") at a special meeting of Capri stockholders to be held on October 25, 2023.

4. As detailed below, the Proxy contains material misrepresentations, and material omissions that render statements therein misleading. These material misrepresentations and omissions render the Proxy false and misleading in violation of the above-referenced Exchange Act provisions and Rule 14a-9.

5. The violations referenced above must be cured in advance of the Stockholder Vote to enable Capri stockholders to cast informed votes with respect to the Merger. Therefore, Plaintiff seeks to enjoin the Defendant from taking any further steps to consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and similarly-situated investors as a result of such violations.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 57 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being haled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8. Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "CPRI" on the NYSE, which is headquartered in this District, and the false and misleading Proxy was filed with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## **PARTIES**

9. Plaintiff is, and has been at all relevant times, a stockholder of Capri common stock.

10. Defendant Capri is a British Virgin Islands corporation with its principal executive offices located at 90 Whitfield Street, 2nd Floor, London, United Kingdom, W1T 4EZ. Capri is a global fashion luxury group consisting of the founder-led brands Versace, Jimmy Choo and Michael Kors.

11. Defendant John D. Idol has served as a member of the Board at all relevant times. He has served as Chairman of the Board since September 2011, and as Chief Executive Officer of the Company since December 2003.

12. Defendant Marilyn Crouther has served as a member of the Board at all relevant times.

13. Defendant Robin Freestone has served as a member of the Board at all relevant times.

14. Defendant Judy Gibbons has served as a member of the Board at all relevant times.

15. Defendant Mahesh Madhavan has served as a member of the Board at all relevant times.

16. Defendant Stephen F. Reitman has served as a member of the Board at all relevant times.

17. Defendant Jane Thompson has served as a member of the Board at all relevant times.

18. Defendant Jean Tomlin has served as a member of the Board at all relevant times.

19. Defendants identified in paragraphs 11 to 18 are collectively referred to herein as the "Individual Defendants," and together with Capri, collectively, the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background to the Merger**

20.     On April 4, 2023, Tapestry's CEO, Joanne Crevoiserat, met with Defendant Idol and presented an offer for Tapestry to acquire Capri for a price of $60.00 per share in cash (which was submitted in writing the next day).

21.     On May 2, 2023, the Board approved projections ("May 2023 Projections") for 2023-2028.

22.     On May 31, 2023, Capri issued a press release announcing its earnings for the fourth quarter of its 2023 fiscal year ("Q4 2023"). The Proxy partially disclosed *only* that the Q4 2023 results reported a 10.5% decrease in revenue for Q4 2023, as compared to Q4 2022. The Proxy, however, failed to disclose that (i) revenue for Q4 2023 actually beat guidance by $60 million, and (ii) on a constant currency basis revenue was down only 3.0% (a more important and meaningful metric that was slightly *ahead* of the Company's expectations, as further discussed below).

23.     On July 30, 2023, after additional due diligence by Tapestry and negotiations between the parties, Ms. Crevoiserat and Defendant Idol agreed on a price of $57.00 per share in cash for Tapestry to acquire Capri.

24.     On July 31, 2023, *just one day later*, the Board approved new projections ("August 2023 Projections") that reduced the May 2023 Projections, purportedly to take into account, among other things, additional planned capital expenditures to refurbish Michael Kors stores not reflected in the May 2023 Projections. At the direction of Capri's management, the Board's financial advisor, Barclays, used the August 2023 Projections in connection with its financial analyses of Capri and the preparation of a fairness opinion ("Fairness Opinion").

25. On August 9, 2023, Barclays provided the Board with a Fairness Opinion concluding that the Merger Consideration was fair to Capri stockholders. After delivery of the Fairness Opinion, the Board approved the Merger and resolved to recommend that Capri stockholders approve the Merger.

26. On August 10, 2023, Capri and Tapestry jointly announced the Merger.

**The Proxy Contains Material Misrepresentations and Omissions**

27. Defendants disseminated a false and misleading Proxy to Capri stockholders with material misrepresentations and omissions of material information that is necessary for Capri stockholders to cast fully informed votes with respect to the Merger.

*Material Omissions Concerning the Proxy's Discussion of Q4 2023 Revenue Results*

28. When a proxy voluntarily discloses one fact about a company's operations, a duty arises to disclose such other facts as are necessary to ensure that what was revealed is not so incomplete as to mislead.

29. Here, the Proxy disclosed the following concerning Capri's Q4 2023 results:

> On May 31, Capri issued a press release announcing its earnings for the fourth quarter of its 2023 fiscal year, **indicating a 10.5% decrease in total revenue in the fourth quarter of fiscal year 2023 compared to the fourth quarter of fiscal year 2022**.

30. The disclosure above, however, was a "half-truth" that will mislead reasonable Capri stockholders into concluding that Q4 2023 revenue was substantially worse than was actually the case. Specifically, the relevant press release ("May 2023 Press Release")—*on the same line that disclosed the 10.5% decrease*—also disclosed that on "a 13-week constant currency basis" Q4 2023 revenue had only decreased 3.0%. Revenue results on a constant currency basis was the more important and meaningful metric since an extra week of revenue was included in the results for the fourth quarter in 2022, and thus comparing revenue in Q4 2023 to revenue in Q4

2022 was not an apples-to-apples comparison. As the Company's Vice President of Investor Relations, Jennifer Davis, cautioned at the outset of Capri's earnings call held on May 31, 2023 ("May 2023 Earnings Call"): "as a reminder, *last year's fourth quarter and full year included an extra week in the fiscal calendar*. Therefore, revenue growth rates for the fourth quarter and fiscal year '23 will be discussed on a 52-week *constant currency basis* unless otherwise noted." The Company's Chief Financial Officer/Chief Operating Officer, Tom Edwards ("Edwards") reiterated this point in his discussion of Q4 2023 results on the May 2023 Earnings Call, stating, "[r]evenue growth rates will be shared on a 52-week constant currency basis unless otherwise stated."

31. Moreover, Edwards further explained on the May 2023 Earnings Call that the 3.0% decrease in revenue in Q4 2023 on a constant currency basis was actually "slightly *ahead* of our expectations." Finally, the $1.35 billion in revenue reported for Q4 2023 actually *beat* revenue guidance provided in the press release issued on February 8, 2023 (reporting Q3 2023 results), which guided towards revenue in Q4 2023 of only approximately $1.275 billion—$60 million *less* than the Company ultimately reported in Q4 2023.

32. Given that (i) the May 2023 Press Release had also disclosed that revenue in Q4 2023 had only decreased 3.0% on a constant currency basis, (ii) the Company's CFO and VP of Investor Relations had specifically explained on the May 2023 Earnings Call that investors should focus on Q4 2023 revenue results on a constant currency basis because Q4 2022 included an extra week of sales, (iii) the 3.0% decrease in revenue in Q4 2023 was slightly ahead of expectations, and (iv) revenue in Q4 2023 had beat guidance, it is highly misleading for the Proxy to disclose only the 10.5% decrease in total revenue in Q4 2023, without also disclosing the considerably smaller 3.0% decrease on a constant currency basis, which was slightly ahead of expectations and beat guidance.

33. In sum, Defendants are not permitted to tell only a "half-truth" in the Proxy by limiting disclosure concerning Q4 2023 revenue to the 10.5% decrease from Q4 2022 since, as noted, the comparison of Q4 2023 to Q4 2022 was not an apples-to-apples comparison because of the extra week included in Q4 2022 results. Instead, Defendants are obligated to provide an accurate and complete description of Q4 2023 revenue in the Proxy. By omitting positive aspects of Capri's revenue results in Q4 2023 from the Proxy—including that Q4 2023 revenue beat guidance, and had only declined 3.0% on a constant currency basis, which was slightly ahead of expectations—Defendants are misleading Capri stockholders into concluding that Q4 2023 revenue was substantially worse than was actually the case.

*Material Omissions Concerning the Fairness Opinion*

34. The Fairness Opinion by Barclays included in the Proxy improperly fails to disclose certain material information concerning what the Proxy refers to as the "Selected Precedent Transaction Analysis" and "Selected Comparable Company Analysis," which are two of the three analyses disclosed in the Proxy that Barclays used to support its opinion that the Merger Consideration was fair to Capri stockholders. Without this information, as described below, Capri stockholders are unable to fully understand the above analyses, and thus are unable to determine what weight to place on such analyses, and the Fairness Opinion as a whole, in determining whether to vote for the Merger. This omitted information rendered the Fairness Opinion misleading, and if disclosed, would significantly alter the total mix of information. Moreover, to the extent that any of the undisclosed information is publicly available, the law does not shift the burden on to Capri stockholders to assemble such information from multiple public sources and attempt to conduct their own analysis.

Selected Precedent Transaction Analysis

35. With respect to Barclays' *Selected Precedent Transaction Analysis*, the Proxy describes the analysis as follows:

> Barclays reviewed and compared the purchase prices and financial multiples paid in selected other transactions that Barclays, based on its experience with merger and acquisition transactions, deemed relevant. Barclays chose such transactions based on, among other things, the similarity of the applicable target companies in the transactions to Capri with respect to the size, products, margins and other characteristics of their businesses, as well as customer demographic . . . Barclays . . . made qualitative judgments concerning differences between the characteristics of the selected precedent transactions and the Merger which would affect the acquisition values of the selected target companies and Capri. Based upon these judgments, Barclays selected a range of 8.0x to 10.0x multiples of *enterprise value* to the last twelve month earnings before interest, taxes, depreciation and amortization (which we refer to as "EV/LTM Adjusted EBITDA"), and applied such range to the management projections to calculate a range of implied prices per share of Capri. The following table sets forth the transactions analyzed based on such characteristics and the results of such analysis:

| Announcement Date | Acquirer | Target |
|---|---|---|
| May 2017 | Coach, Inc. | Kate Spade & Company |
| May 2015 | Ascena Retail Group, Inc. | Ann Inc. |
| December 2013 | Sycamore Partners | The Jones Group, Inc. |
| May 2013 | Apax Partners, L.P. | Rue 21, Inc. |
| October 2012 | PVH Corp. | The Warnaco Group, Inc. |
| November 2010 | Leonard Green & Partners, L.P., TPG | J.Crew Group, Inc. |
| March 2010 | PVH Corp. | Tommy Hilfiger |

| | Implied Price per Share |
|---|---|
| **EV/LTM Adjusted EBITDA** | $49 – $65 |

36. Based on the description of the *Selected Precedent Transaction Analysis* above, it appears that Barclays (i) determined the equity value of each of the targets listed in the above table in connection with their acquisition by the acquirers listed in the above table, (ii) calculated the multiple of each such equity value to each target's last twelve months ("LTM") EBITDA, and (iii) applied the range of multiples (i.e., 8.0-10.0) to Capri's LTM EBITDA to calculate a range for

9

Capri's implied value per share. The Proxy, however, fails to disclose the individual equity values and multiples to LTM EBITDA for any of the 7 transactions identified in the table above. This omission impairs the ability of Capri stockholders to evaluate the validity of the *Selected Precedent Transaction Analysis* for themselves in terms of whether each of the selected transactions and targets are sufficiently comparable to the Merger and to Capri, respectively.

Selected Comparable Company Analysis

37. With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy describes the analysis as follows:

> In order to assess how the public market values shares of similar publicly traded companies and to provide a range of relative implied equity values per ordinary share of Capri by reference to those companies, Barclays reviewed and compared specific financial and operating data relating to Capri with selected companies that Barclays, based on its experience in the luxury apparel and accessories industry, deemed comparable to Capri . . . Barclays [then] calculated and compared various financial multiples and ratios of Capri and the selected comparable companies. As part of its selected comparable company analysis, Barclays calculated and analyzed each company's ratio of its current stock price to its projected earnings per share for fiscal year 2024 (referred to as "P/FY2024E Adjusted EPS"), and each company's enterprise value to its projected earnings before interest, taxes, depreciation and amortization for fiscal year 2024 (referred to as "EV/FY2024E Adjusted EBITDA"). The enterprise value of each company was obtained by adding its short and long-term debt to the sum of the market value of its common equity, the value of any preferred stock (at liquidation value) and the book value of any minority interest, and subtracting its cash and cash equivalents. All of these calculations were performed, and based on publicly available financial data (including FactSet) and closing prices, as of August 8, 2023, the last trading date prior to the delivery of Barclays' opinion.

38. The 8 companies included in the analysis were: Hanesbrands Inc., Kontoor Brands, Inc., Carter's, Inc., Levi Strauss & Co., Ralph Lauren Corporation, Thunder Clothing Co., PVH Corp., and G-III Apparel Group, Ltd. The Proxy, however, fails to disclose the multiples for each of these individual companies, and instead only discloses the range and average of multiples *in the aggregate* for (i) EV/FY2024E Adjusted EBITDA (4.8x-8.7x; 7.6x), and (ii) P/FY2024E Adjusted

EPS (7.4x-14.0x; 10.9x). The omission of multiples for each of the individual companies impairs the ability of Capri stockholders to evaluate the validity of the *Selected Comparable Company Analysis* for themselves in terms of whether each of the selected companies are sufficiently comparable to Capri.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants
### for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

39. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

40. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

41. Defendants disseminated the false and misleading Proxy, which made false and misleading statements, and failed to disclose material facts necessary in order to make statements made therein, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, the Individual Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts

11

from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

43.     Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Capri stockholders to vote in favor of the Merger. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

44.     The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Capri stockholder would view correction of the misrepresentations, and disclosure of the omitted facts specified above as significantly altering the "total mix" of information made available to Capri stockholders.

45.     The Proxy explains that the "affirmative vote of the holders of a majority of the outstanding Capri ordinary shares present virtually or represented by proxy at the Special Meeting and entitled to vote thereon is required to adopt the Merger Agreement." The Proxy soliciting the votes of Chase stockholders is thus an essential link in the accomplishment of the Merger, and transaction causation is established.

46.     Because of the material misrepresentations and omissions in the Proxy specified above, Plaintiff and other Capri stockholders are threatened with irreparable harm insofar as Plaintiff and other Capri stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein

48. The Individual Defendants acted as controlling persons of Capri within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and/or directors of Capri, and participation in, and/or awareness of Capri's operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Capri with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that Plaintiff contends are materially false and misleading, and the omissions of material fact specified above.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. Each of the Individual Defendants had direct and supervisory involvement in the negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed

and considered in connection with such negotiation, review and approval.

52. By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict upon Plaintiff and other Capri stockholders in terms of casting fully informed votes with respect to the Merger.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to Capri stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages;

C. Directing Defendants to account to Plaintiff for all damages suffered as a result of their misconduct;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

E.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 26, 2023                                    **WOHL & FRUCHTER LLP**

By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*